UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LEALA JACKSON

VERSUS

ST. CHARLES PARISH HOUSING
AUTHORITY BOARD OF
COMMISSIONERS, ET AL.

CIVIL ACTION

NO. 18-7917

SECTION M (1)

## ORDER & REASONS

Before the Court is a motion to dismiss third amended petition and alternatively, motion to stay, filed by defendants St. Charles Parish Housing Authority (the "Authority"), Webb Jay, IV, and Leatrice Hollis (collectively, "Defendants").[1] Plaintiff Leala Jackson opposes the motion.[2] Having considered the parties' memoranda, the record, and the applicable law, this Court issues this Order and Reasons dismissing all of Jackson's claims other than those for denial of pre-deprivation process and for intentional infliction of emotional distress.

## I.    BACKGROUND

### A.  Procedural Background

Jackson commenced this lawsuit on August 20, 2018.[3] On September 20, 2018, the named defendants filed a motion to dismiss.[4] Jackson amended her petition on March 26, 2019,[5] and her

---

[1] R. Doc. 67. Also before the Court is a motion to dismiss second amended petition (R. Doc. 29), which is opposed by plaintiff Leala Jackson (R. Doc. 46). The third amended petition (R. Doc. 48) cured one of the issues raised in the motion to dismiss second amended petition (*viz.*, that a named defendant, St. Charles Parish Housing Authority Board of Commissioners, is not an entity or juridical person under Louisiana law which may be sued). *See* R. Doc. 47. The other issues raised in the motion to dismiss second amended petition are incorporated and re-urged in the motion to dismiss third amended petition. Accordingly, the Court DISMISSES the motion to dismiss second amended petition (R. Doc. 29) as moot.

[2] R. Doc. 68.

[3] R. Doc. 1.

[4] R. Doc. 8.

[5] R. Doc. 20.

amended petition drew another motion to dismiss.[6]  On June 17, 2019, Jackson again amended her

petition,[7] and on the same day, the Court dismissed the two then-pending motions to dismiss as

moot.[8]  The named defendants filed a motion to dismiss second amended petition on July 29,

2019.[9]  On September 30, 2019, Jackson amended her petition for the third time.[10]  The Court

denied Jackson leave to file a fourth amended petition on November 6, 2019.[11]  On November 27,

2019, Defendants filed their motion to dismiss third amended petition.[12]

In the operative complaint (the third amended petition), Jackson claims (1) federal and state

due-process violations against Jay and Hollis, personally; (2) retaliatory discharge, in violation of

42 U.S.C. § 1983, against Jay and Hollis, personally; (3) retaliatory discharge, in violation of the

Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, against all Defendants; (4)

age discrimination, pursuant to Title VII, 42 U.S.C. §§ 2000e, *et seq.*, against the Authority; (5)

retaliatory discharge, pursuant to Title VII, 42 U.S.C. §§ 2000e, *et seq.*, against the Authority; (6)

intentional infliction of emotional distress ("IIED"), pursuant to Louisiana Civil Code article 2315,

against Jay and Hollis, personally; and (7) breach of contract against the Authority.[13]  Although

Jackson does not refer to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§§ 621, *et seq.*, in her complaint, she appears to state claims arising under this statute.

## B.  Factual Background

This case arises out of an employment dispute over the events leading to and surrounding

Jackson's termination as an employee of the Authority.[14]  Jackson was a classified civil servant of

---

[6] R. Doc. 21.
[7] R. Doc. 27.
[8] R. Doc. 28.
[9] R. Doc. 29.  *See supra* note 1.
[10] R. Doc. 48.
[11] R. Doc. 64.
[12] R. Doc. 67.
[13] R. Doc. 48.
[14] *Id.*

the State of Louisiana and employed by the Authority at the times relevant to her claims. Jay is chair of the Authority's board of commissioners (the "Board"), and Hollis is executive director of the Authority and was Jackson's immediate supervisor.

According to Jackson, on August 7, 2018, Jay told Jackson that she had given herself two raises illegally and that she had a choice of resigning with a recommendation from the Authority, or face an investigation that could result in her arrest. Jackson denied any wrongdoing and opted for the investigation, after which Hollis informed her that she would be placed on administrative leave during the investigation. Jackson alleges that on August 10, 2018, an Authority employee called to tell her she could pick up her paycheck and that her pay had been reduced by $8.00 per hour, which Jackson confirmed upon receipt of the check.[15] On August 15, 2018, Jackson alleges that the Board's attorney, Don Paul Landry, called to tell her that "there had been a 'friendly mistake' and that it was 'all civil service's fault,'" that "civil service had started the investigation and had messed up," that she could return to work, and, in response to Jackson's inquiring about her pay reduction, that "she would 'have to negotiate that with Leatrice (Hollis).'"[16] Landry allegedly also told Jackson that "Hollis wanted to 'take supervisor' out of [her] job description."[17] Jackson alleges she later learned that Hollis had called the U.S. Department of Housing and Urban Development ("HUD") to have her access to HUD's Public Information Center suspended, and that Hollis had accessed her locked office using a credit card to open the door and left several file cabinets open.[18]

On August 21, 2018, Jackson lodged an appeal with the Louisiana State Civil Service

---

[15] According to Jackson, this same employee, who is 10 years younger, later replaced her at a substantially lower hourly pay rate.
[16] *Id.* at 5-6.
[17] *Id.* at 6.
[18] *Id.*

Commission (the "CSC"), in which she alleged that she had been demoted and had her pay cut without cause and without proper notice. According to Jackson, on September 18, 2018, Dr. Trent Desselle notified the Authority that "he authorized medical leave for [her], due to severe emotional distress that she was experiencing as a result" of the aforementioned events.[19] In September 2018, Jackson lodged a complaint with the U.S. Equal Employment Opportunity Commission (the "EEOC") alleging age discrimination, and in mid-October, she amended this complaint to add a constructive-discharge claim. On November 4, 2018,[20] Hollis directed correspondence to Jackson informing her that her employment with the Authority was terminated. The following day, Jackson amended her CSC appeal to allege that she had been terminated without cause, notice, or an opportunity to review and respond to evidence that formed the basis of her termination. In May 2019, while being interviewed by the EEOC, Jackson told the EEOC that she had been unlawfully terminated as a result of "refusing to cower to Defendants' intim[id]ating tactics and threats to report her to the police," lodging an appeal with the CSC, and filing her discrimination charge with the EEOC.[21] On May 16, 2019, Jackson received a right-to-sue letter from the Department of Justice.

## II.     PENDING MOTION

Defendants now move to dismiss Jackson's third amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and alternatively, to stay this proceeding.[22] Defendants first argue that Jackson's Title VII claims must be dismissed because she is not a "person" under Title VII as she does not allege that the Authority employed at least 15 employees at all pertinent

---

[19] *Id.* at 7. Defendants submit a letter from Dr. Desselle dated August 22, 2018, in which the physician states that Jackson was seen on August 20, 2018, was "unable to return to work due to a medical illness," and had an appointment to be reassessed on September 18, 2018. *See* R. Doc. 67-3.

[20] The third amended complaint lists the date as November 4, 201**9**, but the Court can discern from the other alleged facts that this year is a typographical error. *See* R. Doc. 48 at 7.

[21] *Id.* at 8-9.

[22] R. Doc. 67.

times – nor can she because, they assert, the Authority did not employ more than eight employees during the relevant period.[23] Defendants state that Jackson, in what they read to be an attempt to circumvent this numerosity requirement, makes an incorrect legal conclusion in alleging that the Authority is a "local agency and instrumentality" of the State, as La. R.S. 40:384(16) makes it clear that the Authority is "not a state agency for any purpose."[24] They next argue that Jackson's procedural due-process claims should be dismissed because administrative remedies must be exhausted for such claims to be viable, yet her appeal before the CSC remains pending.[25] Defendants assert that Jackson's § 1983 retaliatory-discharge claim also must be dismissed because the CSC, in the pending appeal, retains exclusive jurisdiction over the dispute about her termination, so she has not exhausted her administrative remedies.[26] In regards to her FMLA claim, Defendants likewise urge that the CSC retains jurisdiction over this employment dispute, and add that (1) because neither Jay nor Hollis is alleged to have been her employer, they cannot have any FMLA liability; (2) Jackson is not an eligible employee under the FMLA because she fails to allege that the Authority employed at least 50 employees at the worksite or within 75 miles, and this requirement applies to public employees; (3) Jackson provides no support for her contention that Dr. Desselle's letter, received during the pendency of her suspension and investigation, required the Authority to halt its investigation and refrain from making an adverse employment decision; (4) Jackson never made an FMLA claim, or so much as mentioned the FMLA, until she first amended her petition on March 26, 2019, well after she had been suspended with pay and subsequently terminated; and (5) she does not allege a single element of an estoppel

---

[23] R. Doc. 67-2 at 5.
[24] Id. at 6-7.
[25] Id. at 8-13.
[26] Id. at 13-15.

claim to prevent Defendants from raising their defenses.[27]  Defendants next argue that Jackson fails to establish an age-discrimination claim because her allegations are conclusory and insufficient to establish a *prima facie* claim for age discrimination under the ADEA, and the CSC retains exclusive jurisdiction over the dispute concerning her termination.[28]  Defendants maintain that Jackson's Title VII retaliatory-discharge claim should be dismissed for failure to exhaust administrative remedies, and because she cannot allege a claim under Title VII.[29]  Finally, Defendants argue that Jackson's state-law claims cannot be maintained if her federal claims are dismissed; that, regardless, Jackson fails to allege grounds for supplemental subject-matter jurisdiction, as required by Federal Rule of Civil Procedure 8, though she does list the relevant statutory provisions; and that Jackson's breach-of-contract claim is simply a compensation claim, for which the CSC retains exclusive jurisdiction.[30]  In the alternative to dismissal, Defendants ask the Court to stay the action pending a final determination of the CSC appeal.[31]

In opposition, Jackson begins by arguing that Defendants' points about the FMLA and Title VII numerosity requirements fail because of (1) the "hybrid economic realities" of her employment as a classified state civil servant working at the Authority, and (2) the Authority's representation to her and other employees at the Authority that they were FMLA and Title VII-protected.[32]  Addressing Defendants' other FMLA-related arguments, Jackson maintains that she gave Defendants notice of her need for medical leave after the Board's attorney informed her that

---

[27] *Id.* at 15-19.
[28] *Id.* at 19-20.  Defendants also argue that were the Court to determine that the Authority is a state agency, which Defendants deny, then Eleventh Amendment issues must be addressed.  They add that there is no allegation that either Jay or Hollis was personally linked to the reasons for her termination decision by the Authority.  As to this last point, the Court notes that Jackson's age-discrimination claim is made against only the Authority, not Jay or Hollis.
[29] *Id.* at 20-21.
[30] *Id.* at 21-22.
[31] *Id.* at 22-23.
[32] R. Doc. 68-1 at 11-13, 17.

she could return to work, and that Defendants were aware of this need because Hollis sent Jackson

a letter dated September 4, 2018, acknowledging Dr. Desselle's orders.[33]  Jackson next argues that

exhaustion of state administrative remedies is not required for her claims brought against Jay and

Hollis under the Fourteenth Amendment and § 1983.  She asserts that the CSC has no jurisdiction

to hear § 1983 claims, or to provide general tort or punitive damages, which she seeks in

accordance with § 1983, Title VII, the ADEA, the FMLA, and state law, and so the Court has

subject-matter jurisdiction over these claims.[34]  She adds that Defendants' jurisdictional arguments

based on cases in which the plaintiff did not appeal a claim to the CSC are meritless, as she

appealed both her demotion and termination to the CSC.[35]  Jackson next argues that her pleadings

make a *prima facie* showing of substantive and procedural due-process violations, in accordance

with the Fourteenth Amendment and § 1983, because Jay and Hollis were personally involved in

the events leading to her termination.[36]  Jackson maintains that her complaint also makes a *prima*

*facie* showing that Defendants violated the anti-interference provisions of the FMLA,[37] and that

the Authority violated the anti-discrimination and anti-retaliation provisions of the ADEA.[38]  So

long as one or more of her federal claims survive, Jackson argues, the Court will retain

supplemental jurisdiction over her state-law claims.[39]  She notes that Defendants do not assert that

she fails to allege facts sufficient to support her IIED or breach-of-contract claim.[40]  Jackson

---

[33] *Id.* at 13-14; *see* R. Doc. 68-6.  Jackson notes that Hollis does not state in the letter that Jackson is not FMLA-eligible.  R. Doc. 68-1 at 14 n.12.

[34] R. Doc. 68-1 at 14-15.

[35] *Id.* at 15 (citing *Pike v. Off. of Alcohol & Tobacco Control of the La. Dep't of Revenue*, 157 F. Supp. 3d 523 (M.D. La. Sept. 22, 2015), and *Rathjen v. Litchfield*, 878 F.2d 836 (5th Cir. 1989)).

[36] *Id.* at 15-16.

[37] *Id.* at 16-17.

[38] *Id.* at 18

[39] *Id.* at 19.

[40] *Id.*  In her opposition memorandum, Jackson states that the alleged facts are sufficient to support claims against the Authority, vicariously, and Jay and Hollis, personally, for IIED.  In her complaint, however, her IIED claim is made against only Jay and Hollis; she does not include a vicarious liability claim against the Authority.  *See* R. Doc. 48.

concludes that the matter should not be stayed because she is not required to exhaust her remedies with the CSC before proceeding with her federal action.[41]

## III.    LAW & ANALYSIS

### A.  Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to challenge a court's subject-matter jurisdiction.    "[A] claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate' the claim." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012)).    The party asserting jurisdiction bears the burden of proving that subject-matter jurisdiction exists.  *Id.*  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 235 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

### B.  Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-

---

[41] *Id.* at 19-20.

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying

pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (internal quotation marks and citation omitted)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### C. Analysis

#### 1. Procedural due process

##### a. Federal claim (Section 1983)[42]

Defendants urge the Court to dismiss Jackson's first cause of action because, they argue, procedural due-process claims require exhaustion of administrative remedies, citing *Rathjen*, 878 F.2d at 840-41, and *LeBeouf v. Manning*, 575 F. App'x 374, 378-79 (5th Cir. 2014). To the extent that Defendants are making a jurisdictional argument, as Jackson notes, it is well-established that § 1983 claims do not require exhaustion of state administrative or judicial remedies. *Patsy v. Bd. of Regents of State of Fla.*, 475 U.S. 496, 516 (1982); *Romano v. Greenstein*, 721 F.3d 373, 376 (5th Cir. 2013) (citing *Patsy*). Furthermore, the CSC does not have jurisdiction to hear § 1983 claims. *Childress v. City of New Orleans*, 2006 WL 6912826, at *12 (La. App. Feb. 15, 2006) (citing *Eberhardt v. LeVasseur*, 630 So. 2d 844, 846-47 (La. App. 1993)).

To the extent that Defendants rely on *Rathjen* and its progeny to argue that a procedural due-process claim cannot lie when administrative remedies were not exhausted, the Fifth Circuit has since clarified that *Rathjen*'s statement that "no denial of procedural due process occurs where a person has failed to utilize the state procedures available to him" is "imprecise." *Greene v. Greenwood Pub. Sch. Dist.* 890 F.3d 240, 243 n.6 (5th Cir. 2018) (quoting *Rathjen*, 878 F.3d at 839-40). *Rathjen* and the cases upon which it relied stand for the proposition that a plaintiff cannot challenge the adequacy of specific remedies she chose not to pursue (for example, a plaintiff cannot challenge post-deprivation procedures when she did not pursue those procedures). *Id.* None of these cases held that "a plaintiff who chooses not to pursue a *post*-deprivation remedy is precluded

---

[42] Although her complaint does not refer to § 1983 in the allegations of her first cause of action, Jackson's opposition memorandum clarifies that she intended to bring her Fourteenth Amendment procedural due-process claim under § 1983, *see* R. Doc. 68-1 at 4, 15, which is the necessary vehicle to do so.

from claiming that he was unconstitutionally denied *pre*-deprivation process." *Id.* (emphasis added). Indeed, even a plaintiff who successfully pursued post-deprivation administrative remedies may have a cognizable procedural due-process claim for denial of adequate pre-deprivation process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 535-37, 544 (1985) (plaintiff who was reinstated could claim that he was deprived of due process because he was not given an opportunity to respond before he was terminated). In other words, a plaintiff's claim that she was deprived of due process *before* the deprivation occurred cannot be defeated by pointing to the procedures available *after* a deprivation. An employee with a constitutionally-protected property interest in her employment has a right to notice and a pre-termination opportunity to respond, even when coupled with more extensive post-termination procedures. *Id.* at 542-48. Once such an employee is terminated without notice or an opportunity to respond, she has a cognizable procedural pre-termination due-process claim, regardless of the availability of administrative appeals.

Defendants assert that Jackson "has no serious claim that she has been deprived of constitutionally protected civil service appeal and review rights for the reason that she in fact appealed to the CSC," but this misconstrues part of Jackson's claim.[43] Jackson alleges that she was suspended and her pay was cut without a hearing, that she was terminated without being afforded a right to receive and review evidence and respond, and that her retirement benefits were cut off without being given notice.[44] Jackson has sufficiently stated a claim that she was deprived

---

[43] R. Doc. 67-2 at 12.

[44] R. Doc. 48 at 10. However, to the extent that Defendants are addressing Jackson's claim that her "due process rights were further violated, because she was never informed that she had a right to appeal any adverse decision … and she was never informed about the procedures for lodging an appeal," *see id.* at 11, they are correct. Jackson cannot dispute the adequacy of notice regarding her appeal rights, when she in fact appealed the adverse employment decisions, and that appeal process has not been exhausted. Accordingly, the Court DISMISSES Jackson's federal and state procedural due-process claims insofar as they challenge the adequacy of the post-deprivation process afforded to her.

of property interests without the minimal due process required by the Fourteenth Amendment, that is, without notice or an opportunity to respond before the deprivation. *See id*.

### b. State-law claim[45]

Article I, section 2 of the Louisiana Constitution, like the Fourteenth Amendment, requires that persons with protected property interests in their employment be afforded pre-deprivation notice and opportunity to respond. *Lange v. Orleans Levee Dist.*, 56 So. 3d 925, 930-31 (La. 2010) (pre-termination hearing is obligatory, though it need not be elaborate, under Louisiana constitution). Because Jackson's § 1983 federal procedural due-process claim survives in part, this Court may exercise supplemental subject-matter jurisdiction, pursuant to 28 U.S.C. § 1367, over this separate state-law procedural due-process claim, which does not fall under the CSC's exclusive jurisdiction. *See Smith v. Jefferson Par.*, 2011 WL 2610527, at *3 (E.D. La. July 1, 2011) (retaining jurisdiction over civil service employee's state-law procedural due-process claim after denying dismissal of federal procedural due-process claim). For the same reasons stated with respect to her federal procedural due-process claim, the Court does not dismiss Jackson's state-law procedural due-process claim insofar as it alleges inadequate pre-deprivation process.

### 2. Retaliatory discharge (Section 1983)

Defendants assert that Jackson's § 1983 retaliatory-discharge claim must be dismissed because the CSC has exclusive jurisdiction to hear all adverse employment actions, and these administrative remedies must be exhausted.[46] Defendants point to *Pike*, in which the district court held that the plaintiff could not bring a state-law disability discrimination claim if she did not raise

---

[45] Although Jackson brings her procedural due-process claim under both the Fourteenth Amendment and the Louisiana Constitution, the Court construes the alleged state constitutional violation as a separate claim from her § 1983 / Fourteenth Amendment claim because "a claimed violation of a state constitutional right is not cognizable under § 1983." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (collecting cases).

[46] R. Doc. 67-2 at 13-15.

this claim before the CSC, which has exclusive jurisdiction over classified-civil-servant termination claims, including discrimination claims based on discipline or removal. 157 F. Supp. 3d at 540. Defendants' argument misses the mark: while the CSC may have jurisdiction to hear certain *state-law* discrimination claims in conjunction with its exclusive jurisdiction over termination claims, it does not have jurisdiction to hear § 1983 claims. *Childress*, 2006 WL 6912826, at *12 (citation omitted).

Nonetheless, Jackson's claim fails for another reason. According to Jackson's complaint, Jay and Hollis "violated" § 1983 by terminating her after she engaged in the "protected activities" of (1) appealing an adverse employment decision; (2) filing a federal civil lawsuit in which she alleged due-process violations; and (3) instituting age-discrimination and constructive-discharge claims with the EEOC.[47] But "[r]ather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."[48] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (quoting *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)) (citation omitted). Jackson's complaint fails to identify any constitutional or statutory provision protecting either of the first two activities that were allegedly violated by Jay and Hollis.[49] As for

---

[47] R. Doc. 48 at 11. Jackson also lists a "retaliatory discharge" claim with the EEOC here, but according to her statement of facts, she did not institute such a claim with the EEOC. *See id.* at 3-10.

[48] Jackson acknowledges as much in her opposition memorandum. *See* R. Doc. 68-1 at 4.

[49] In her opposition memorandum, Jackson admits the problem with this § 1983 claim, in that she states that the complaint "misnames her claims against [Jay and Hollis] brought in accordance with 42 USC § 1983 and the 14th Amendment for violation of her substantive due process rights as a retaliation claim." R. Doc. 68-1 at 5. "To prevail on a claim for violation of substantive due process in the public-employment context, the plaintiff must show '(1) that she had a property interest/right in her employment, and (2) that the public employer's termination of that interest was arbitrary and capricious.'" *Mills v. Garcia*, 650 F. App'x 873, 878 (5th Cir. 2016) (quoting *Moulton v. City of Beaumont*, 991 F.2d 230 (5th Cir. 1993)) (internal brackets omitted). The allegations in Jackson's second cause of action are allegations of retaliation, though, not allegations that her termination was arbitrary and capricious such that the Court could construe this claim as a substantive due-process claim. Retaliation claims are distinct from substantive due-process claims. *See, e.g., Harrington*, 118 F.3d at 364-65, 367 (plaintiff brought a retaliatory-discharge claim under the First Amendment and a separate substantive due-process claim). Regardless of Jackson's attempt to "rename" this cause of action as a substantive due-process claim in her opposition memorandum, the Court is limited to addressing the allegations in the complaint on a Rule 12(b)(6) motion. *Lone Star Fund*, 594 F.3d at 387. The

the third activity, the ADEA does prohibit employers from discriminating against an employee for filing a charge in an investigation, proceeding, or litigation under the ADEA.[50] 29 U.S.C. § 623(d). Substantive rights secured by the ADEA may not, however, be used as the basis for a § 1983 suit. *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989) (citations omitted); *see also Lefleur v. Tex. Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997) ("[W]here a plaintiff asserts a claim of age discrimination under § 1983 and where the facts alleged will not independently support a § 1983 claim, the plaintiff's age discrimination claim is preempted by the ADEA."). While it may be that, as in the Title VII context, a plaintiff may pursue a § 1983 retaliatory-discharge claim for the same conduct underlying an ADEA retaliatory-discharge claim, to do so, she must allege a distinct statutory or constitutional basis for the § 1983 claim. *See Gallentine v. Housing Auth. of City of Port Arthur*, 919 F. Supp. 2d 787, 810 (E.D. Tex. 2013) (citing *Evans v. City of Houston*, 246 F.3d 344, 356 n.9 (5th Cir. 2001), and *Johnston*, 869 F.2d at 1573-76)). Jackson has failed to identify such a basis, and therefore, she may not bring a § 1983 claim to vindicate what are clearly ADEA substantive rights.[51]

Accordingly, the Court dismisses Jackson's § 1983 retaliatory-discharge claim with prejudice.

---

complaint did not give Defendants "fair notice" of a substantive due-process claim, as can be discerned from the Defendants' lack of any mention of substantive due process in their motion to dismiss. *See Twombly*, 550 U.S. at 555. Finally, the Court notes that Jackson amended her petition three times, giving her sufficient opportunity to amend the allegations in this cause of action to assert a substantive due-process claim. Moreover, in her attempt to amend the petition a fourth time, which was rejected, she once again deigned not to address this claim. *See* R. Doc. 56-6 at 13.

[50] As the Court explains below, Jackson's age-discrimination and constructive-discharge claims brought before the EEOC arose under the ADEA, not Title VII, as implied by Jackson's "Title VII" retaliatory-discharge claim.

[51] As Defendants observe, Jackson's § 1983 retaliatory-discharge claim is "identical" to her "Title VII" (ADEA) retaliatory-discharge claim, *see* R. Doc. 67-2 at 20, with the exception that it is brought against Jay and Hollis instead of the Authority. As only employers may be liable under the ADEA, and Jackson does not allege that Jay or Hollis was her employer, she cannot bring an ADEA retaliatory-discharge claim against them under the guise of § 1983. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 686 (5th Cir. 2001) ("[T]he ADEA provides no basis for individual liability for supervisory employees.") (internal quotation marks and citation omitted).

### 3. Retaliatory discharge (FMLA)

As to Jackson's FMLA claim, Defendants first re-urge their argument that the CSC has exclusive jurisdiction over "all employment termination issues" and so this claim should be dismissed.[52] The FMLA does not, however, require the exhaustion of administrative remedies before bringing suit in federal or state court. *Ruh v. Superior Home Health Care, Inc.*, 2015 WL 6870100, at *3 (M.D. La. Nov. 6, 2015) (citing 29 U.S.C. § 2617(a)(2)). This Court has jurisdiction over Jackson's FMLA claim, and neither dismissal nor a stay of this claim is warranted solely because of Jackson's pending CSC appeal. *See Williams v. Housing Auth. of Rapides Par.*, 2008 WL 5574702, at *2 (W.D. La. Oct. 22, 2008) (recommending denial of a stay of an FMLA claim, over which defendants admitted the court had jurisdiction, because "the [pending] Civil Service case is not 'parallel' to the federal claims" and "determination whether plaintiff's Civil Service rights were violated is based on an entirely different standard than whether defendants violated the FMLA"), *adopted as modified*, 2009 WL 928572 (W.D. La. Jan. 30, 2009).

Defendants next argue that Jackson's FMLA claim is made against all Defendants, yet only an employer can have liability under the FMLA, and so no FMLA claim can exist against Jay or Hollis. Jackson does not clearly oppose or concede this point. While it is true that only employers are subject to the FMLA's anti-retaliation provisions, *see* 29 U.S.C. § 2615(a)(2), the FMLA defines the term "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Accordingly, an individual supervisor may be held liable under the FMLA. *See Burgdorf v. Union Pac. R.R. Co.*, 2019 WL 2464485, at *14 (W.D. Tex. Feb. 26, 2019) (explaining individual-supervisor liability under the FMLA). The Court finds it unnecessary to determine whether Jay or

---

[52] R. Doc. 67-2 at 15.

Hollis are subject to liability under the FMLA, however, because Jackson's FMLA claim fails on other grounds.

According to Defendants, Jackson's FMLA claim fails because she does not, and cannot, allege that she is an "eligible employee" under the FMLA as the Authority does not employ at least 50 employees at the worksite or within 75 miles. Jackson counters that the Court "must consider the hybrid economic realities of [her] employment," in that while she contracted with the Authority, which paid her salary and benefits, the Authority shared control over the terms and conditions of her employment with the CSC.[53]

From the term "eligible employee," the FMLA excludes "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii) (the "FMLA 50/75 Employee Threshold"). While the applicable regulations clarify that "[a]ll public agencies are covered by the FMLA regardless of the number of employees[,] … employees of public agencies must meet all of the requirements of eligibility," including the FMLA 50/75 Employee Threshold. 29 C.F.R. § 825.108(d). Without an allegation that she meets this requirement,[54] Jackson's claim almost certainly fails unless she makes a valid estoppel claim.[55]

Nevertheless, the Court will consider whether Jackson can make her "hybrid economic realities" argument to meet the requirement. Jackson relies on *Patterson v. Yazoo City*, 847 F. Supp. 2d 924, 933-40 (S.D. Miss. 2012), in which the court used the "hybrid economic

---

[53] R. Doc. 68-1 at 11-12. Jackson makes this point in response to Defendants' numerosity-requirement arguments for both the FMLA and Title VII.

[54] The Court notes that Jackson does not clearly allege that she is an "eligible employee" under the FMLA. The language in her complaint states only that she was a "qualified employee" and, in her statement of facts, she states that she sought production of her personnel file because it allegedly contains documents "that will show that [she] was FMLA eligible." R. Doc. 48 at 9, 12.

[55] For a discussion of estoppel, *see infra* at 20-21.

realities/common-law control" test together with the *Trevino* test[56] to determine that the plaintiff could aggregate the employees of two of the defendants (the city and city commission, but not the county) under the "single-employer theory" for purposes of meeting the definition of "employer" under the Americans with Disabilities Act and the ADEA. *Id.* Regardless of whether these tests should be applied to government agencies, which Jackson acknowledges is highly questionable,[57] Jackson's reliance on these tests is misplaced. The *Patterson* court explained that these two tests are used "for ascertaining whether a plaintiff-employee has a relationship with an alleged defendant-employer" in employment discrimination cases. *Id.* at 933. "The hybrid test should be used as an initial inquiry to resolve … whether a plaintiff is an employee of the defendant (or one of the defendants, in a multi defendant case)" and the *Trevino* analysis is used if "questions remain whether a second (or additional) defendant is sufficiently connected to the employer-defendant so as to be considered a single employer." *Id.* at 934 (quoting *Schweitzer v. Advanced Telemktg. Corp.*, 104 F.3d 761, 764 (5th Cir. 1997)). Neither the CSC nor the State of Louisiana is a defendant in this matter, nor does Jackson expressly allege that either was her employer. Jackson does not cite any authority showing that this analysis may be used to determine whether a non-defendant government entity – particularly one which is protected by the Eleventh Amendment[58] – is so connected to a named defendant to be considered a single employer for purposes of meeting statutory numerosity requirements, despite not actually being a party to the suit. In other words, it appears that Jackson wishes the Court to view the state as her employer when it is convenient to

---

[56] *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983).

[57] R. Doc. 68-1 at 11 n.8.

[58] *See Coleman v. Ct. App. Md.*, 566 U.S. 30, 33 (2012) (no abrogation of Eleventh Amendment immunity for claims made under the FMLA's self-care provision); *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d, 764 (5th Cir. 2015) (state agency protected by Eleventh Amendment immunity against FMLA interference and retaliation claim made under self-care provision). *But see Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 724 (2003) (abrogating Eleventh Amendment immunity for the FMLA's family-care provision). Jackson's FMLA retaliation claim is made under the self-care, not family-care, provision, and thus a claim against the State of Louisiana or its agencies would be barred by the Eleventh Amendment.

her (to possibly meet the FMLA 50/75 Employee Threshold) but not when it works to her disadvantage (to trigger Eleventh Amendment issues).[59]

Defendants point the Court to *Carmouche v. Marksville Housing Auth.*, 2013 WL 3049408 (W.D. La. June 17, 2013), wherein a variation of Jackson's argument was rejected. There, the plaintiff, also a Louisiana state civil servant working at a housing authority, argued that because La. R.S. 40:384(16) instructs that a local housing authority "is a political subdivision of this state" and 29 C.F.R. § 825.108(c)(1) provides that a "State or a political subdivision of a State constitutes a … single employer for purposes of determining employee eligibility," the State of Louisiana should be considered the plaintiff's former employer for purposes of the FMLA and meeting the FMLA 50/75 Employee Threshold. *Carmouche*, 2013 WL 3049408, at *2. The court rejected this argument, noting that the Louisiana statutory provision, when read in its entirety, clarifies that a local housing authority "is not a state agency for any purpose," La. R.S. 40:384(16), and that the federal regulation clarifies "what is intended by its language by stating 'for example, a State is a single employer; a county is a single employer; a city or town is a single employer.'" *Carmouche*, 2013 WL 3049408, at *3 (quoting 29 C.F.R. § 825.108(c)(1)) (internal brackets omitted). This Court agrees with this reading of the Louisiana statute and the federal regulation, and adds that the regulation specifically states that a "State *or* a political subdivision of a State constitutes a … single employer," so that it is clear that the Authority – a political subdivision of the state – constitutes a single employer, not the state *and* the Authority, for purposes of the FMLA. 29 C.F.R. § 825.108(c)(1) (emphasis added). As the *Carmouche* court concluded with respect to the housing

---

[59] Jackson makes this same argument to meet Title VII's numerosity requirements. As referenced *supra* note 50, the Court construes Jackson's Title VII claims as ADEA claims. Jackson would also face an Eleventh Amendment problem for her ADEA claims. *See Montgomery-Smith v. La. Dep't of Health & Hosps.*, 2017 WL 679536, at *13 (E.D. La. Feb. 21, 2017) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000)) (ADEA claim against Louisiana barred by Eleventh Amendment).

authority there, the Authority here does not permit Jackson to meet the definition of "eligible employee" under the FMLA.

Jackson argues that even if she cannot meet the FMLA 50/75 Employee Threshold, the Authority represented to her and other state civil servants working at the Authority that they were FMLA-protected.[60]  The threshold number is an element of an FMLA claim for relief, not a jurisdictional limitation, and therefore the Court has jurisdiction to consider what the Court construes as an equitable-estoppel argument.  *Minard v. ITC Deltacom Comms., Inc.*, 447 F.3d 352, 357-58 (5th Cir. 2006).

> [A]n employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.

*Id.* at 359 (footnote omitted).  Even reading Jackson's complaint generously to allege that the Authority represented to her that she was covered by the FMLA, it is questionable that such a representation is alleged to have been "definite."  Regardless, nowhere in the complaint does Jackson allege that she was reasonably relying on the Authority's representation in taking so-called "medical leave," much less that such action was taken to her detriment.  *See, e.g., Dennis v. St. Tammany Par. Hosp. Serv. Dist. No. 1*, 2017 WL 2470874, at * 4 (E.D. La. Apr. 26, 2017) (holding that the plaintiff could not invoke the doctrine of equitable estoppel because she did not show or even argue that her decision to undergo a medical procedure was based on her employer's misrepresentation of FMLA eligibility).  After all, according to Jackson's own allegations, she

---

[60] R. Doc. 68-1 at 13.  In her opposition memorandum, Jackson states that the Authority also represented to them that they were Title VII-protected.  *Id.*  However, neither her third amended complaint nor any of her attachments to the opposition memorandum references a representation made to Jackson and the other employees that they were Title VII-protected.  *See* R. Docs. 48; 68-4; 68-5.

gave notice of "medical leave" ***well after she had already been suspended***.[61]

Finally, even if Jackson's complaint could be read to sufficiently allege equitable estoppel so that she may overcome the employee-threshold requirement, Jackson's allegation that the Defendants "violated FMLA[] when they terminated [Jackson] while she was on qualified medical leave" is insufficient to state a claim for retaliatory discharge under the FMLA.[62] Jackson does not allege that she requested or took leave pursuant to the FMLA, and even if she did, "[s]imply being on FMLA leave [would] not insulate [her] from being lawfully terminated for the same conduct which prompted her suspension." *Terry v. Promise Hosp. of Ascension, Inc.*, 2014 WL 4161581, at *10 (M.D. La. Aug. 19, 2014). "[A]n employer is entitled to dismiss an employee for any lawful reason at any time, whether before, during, or after an employee requests or takes leave pursuant to the FMLA, as long as the employer does not discriminate or retaliate against the employee for requesting or taking such leave." *Id.* at *11 (quoting *Maldonado v. Frio Cty.*, 2004 WL 1304951, at *4 (W.D. Tex. June 1, 2004)) (emphasis omitted). Jackson does not allege that Defendants retaliated against her for requesting or taking leave pursuant to the FMLA, but rather only that Defendants terminated her while she was on medical leave, and so she fails to state an FMLA retaliatory-discharge claim. Accordingly, Jackson's FMLA claim is dismissed with prejudice.

---

[61] Jackson now emphasizes that this "medical leave" was taken after the Board's attorney, Landry, allegedly told her that she could "return to work," but her complaint contains no allegations that she relied on his representation in any way.

[62] R. Doc. 48 at 12.

### 4. Age discrimination (ADEA)[63]

In response to Jackson's age-discrimination claim, Defendants reiterate that the CSC has exclusive jurisdiction over the issues related to Jackson's discharge, and that the facts alleged as the basis for this claim are "thoroughly intertwined with the issues raised" in the CSC appeal.[64] The ADEA, however, "requires only that the grievant *commence* state proceedings … before federal litigation is instituted." *Oscar Meyer & Co. v. Evans*, 441 U.S. 750, 759 (1979) (emphasis in original). Exhaustion of state remedies is not required. *Woodford v. Ngo*, 548 U.S. 81, 98 (2006). While federal administrative remedies must be exhausted,[65] "grievants may file with state and federal agencies simultaneously" rather than sequentially. *Oscar Meyer*, 441 U.S. at 756. Although Jackson does not allege that she brought a discrimination claim before the CSC or any state agency, because Louisiana is a "deferral state," Jackson is deemed to have initiated state administrative proceedings when she filed a charge of discrimination with the EEOC. *See Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007) (addressing the similar scheme under Title VII); *Pechon v. La. Dep't of Health & Hosps.*, 2009 WL 2046766, at *13 (E.D. La. July 14, 2009). Accordingly, the Court has jurisdiction to hear Jackson's age-discrimination claim.

Defendants maintain that Jackson's "conclusory allegations" do not establish a *prima facie* claim of age discrimination under the ADEA.[66] The Supreme Court has specifically held,

---

[63] R. Doc. 67-2 at 19. Defendants address Jackson's age-discrimination claim under the ADEA, although Jackson's complaint invoked Title VII. *See* R. Doc. 48 at 12. Title VII, however, does not provide a cause of action for age discrimination. *Falgout-Loebig v. Rosbottom Emps, L.L.C.*, 2006 WL 1984684, at *7 & n.3 (E.D. La. July 10, 2006) (citing 42 U.S.C. § 2000e-2(a)(1)). Rather, the ADEA provides the exclusive federal remedy for age discrimination. *Lefleur*, 126 F.3d at 760. Jackson's opposition memorandum confirms that her age-discrimination claim arises under the ADEA, not Title VII. *See* R. Doc. 68-1 at 5-6, 18.

[64] R. Doc. 67-2 at 19-20.

[65] 29 U.S.C. § 626(d). Jackson alleges that she exhausted EEOC administrative remedies, and Defendants do not challenge this allegation. *See* R. Doc. 48 at 3.

[66] R. Doc. 67-2 at 19.

however, that an employment-discrimination complaint does not need to "include specific facts establishing a prima facie case of discrimination … and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). Jackson's age-discrimination claim still fails, though, because she does not allege that the Authority employed at least 20 employees, as required to maintain a claim under the ADEA.[67]   29 U.S.C. § 630(b); *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503-04 (2006) (employee-numerosity requirement is an element of a Title VII claim); *French v. Applied Psychology Grp. of Texoma*, 245 F. Supp. 3d 824, 826 (E.D. Tex. 2017) (applying *Arbaugh* to the ADEA) (collecting cases). Accordingly, Jackson's age-discrimination claim is dismissed for failure to state a claim.

## 5. Retaliatory discharge (ADEA)[68]

In arguing that this claim should be dismissed, Defendants once again assert that the CSC has exclusive jurisdiction as to all alleged adverse employment actions, but as previously

---

[67] The Court construes Defendants' argument that Jackson failed to meet the employee-numerosity requirement for Title VII (requiring at least 15 employees) as attacking her ADEA claims on the same grounds. *See* R. Doc. 67-2 at 5-7. Furthermore, the Court's discussion concerning Jackson's other deficient arguments to meet the FMLA 50/75 Employee Threshold applies equally here.

[68] As with her age-discrimination claim, the Court construes Jackson's fifth cause of action under the ADEA, not Title VII. Jackson alleges that she was terminated after engaging in the protected activity of instituting a charge of age discrimination and constructive discharge with the EEOC (Jackson also lists the protected activities of "appealing an adverse employment decision" and "filing a federal civil lawsuit in which she alleged due process violations," but neither of these activities is protected under the ADEA or Title VII, and so do not constitute a basis for a retaliation claim under either statute). The Court reads Jackson's EEOC constructive-discharge claim as having been brought under the ADEA, as she alleges that it was an amendment to her age-discrimination charge, and does not allege any other basis for discrimination in her complaint, as would permit the charge to be read as having been brought under Title VII or another employment-discrimination statute. Constructive discharge may serve as the "adverse employment decision" required for an employment-discrimination claim. *See, e.g., Drechsel v. Liberty Mut. Ins. Co.*, 695 F. App'x 793, 795, 797-98 (5th Cir. 2017). Although Defendants treat this claim as a Title VII retaliation claim, *see* R. Doc. 67-2 at 20, Jackson's opposition memorandum confirms that she intended to bring this retaliation claim under the ADEA. *See* R. Doc. 68-1 at 6, 18. Were Jackson's claims to be construed as Title VII claims, they should be dismissed because Title VII protects against neither age discrimination nor retaliation for filing ADEA claims with the EEOC, and because Jackson does not allege that the Title VII numerosity requirement is met. Accordingly, the Court DISMISSES Jackson's claims to the extent they are brought pursuant to Title VII.

explained, this argument is meritless as to Jackson's ADEA claims.[69]  Nonetheless, the Court dismisses this claim with prejudice for the same reasons it dismisses Jackson's age-discrimination claim – namely, the failure to allege that the Authority employed at least 20 employees, as required for an ADEA claim.

### 6.  Intentional infliction of emotional distress (IIED)

Defendants argue that Jackson's state-law IIED claim can only exist if one of the federal claims survives.  As previously explained, because Jackson's federal procedural due-process claim, insofar as it alleges that she was not afforded adequate pre-deprivation process, survives this motion, the Court retains supplemental subject-matter jurisdiction over her state-law claims. In addition, the CSC has no subject-matter jurisdiction over tort cases and cannot award general monetary damages, which Jackson seeks as relief for this claim.[70]  *Kling v. La. Dep't of Revenue*, 281 So. 3d 696, 709-10 (La. App. 2019) (citations omitted).  Jackson's IIED claim is therefore not dismissed.[71]

### 7.  Breach of contract

In addition to making the same argument regarding supplemental jurisdiction for Jackson's breach-of-contract claim as they made for her IIED claim, Defendants contend that Jackson's

---

[69] Because a federal court must always ensure it has subject-matter jurisdiction over a claim, *Arbaugh*, 546 U.S. at 501, 506-07, the Court notes that Jackson's complaint does not allege that she ever brought a retaliatory-discharge claim before the EEOC.  Rather, she alleges only that she "informed" the EEOC of the alleged retaliation during the EEOC's investigatory interview.  R. Doc. 48 at 8.  Her retaliation claim is therefore unexhausted.  However, in the Fifth Circuit, a plaintiff may proceed in court on an unexhausted retaliation claim if that claim grows out of the facts alleged in an earlier exhausted charge.  *Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 369 (5th Cir. 2017) (citing *Gupta v. East Tex. State Univ.*, 654 F.2d 411 (5th Cir. 1981)).  While there is some doubt whether the "*Gupta* exception" survived the Supreme Court's decision in *National Railroad Corp. v. Morgan*, 536 U.S. 101 (2002), it remains good law and this Court is bound to follow its holding.  *Mitchell v. Univ. of La. Sys.*, 154 F. Supp. 3d 364, 401-03 (M.D. La. 2015) (applying *Gupta* and permitting plaintiff to proceed on an unexhausted ADEA retaliation claim which grew out of her exhausted discrimination claims).  Accordingly, because Jackson's ADEA retaliation claim grows out of her exhausted discrimination claims, this Court has jurisdiction to consider the retaliation claim.

[70] R. Doc. 48 at 14-15.

[71] As for Defendants' point regarding Jackson's failure to allege a statement of the grounds for supplemental subject-matter jurisdiction, as required by Federal Rule of Civil Procedure 8, the statutory reference to 28 U.S.C. § 1367 suffices for notice pleading in federal court.

breach-of-contract claim is "nothing more than a claim for compensation which is an issue in the pending CSC appeal."[72] Jackson does not appear to oppose this argument.[73] It seems that Jackson seeks lost wages in the form of back pay as relief for this claim.[74] The Court agrees with Defendants: the CSC retains jurisdiction over claims for lost wages and back pay.[75] *See Kling*, 281 So. 3d at 710 (reversing an award of lost wages because the CSC retained jurisdiction over such a claim). Therefore, the Court dismisses Jackson's breach-of-contract claim.

## 8. Abstention

Finally, Defendants argue in the alternative that the Court should stay this matter pending resolution of the CSC appeal to "avoid 'potential confusion of conflicting outcomes' regarding the very same fact determinations and employment issues pending both in the CSC appeal and before this Court."[76] Jackson counters that the Court may not forfeit or waive its subject-matter jurisdiction and that a stay would be prejudicial to her claims.[77]

Once a federal court determines that jurisdiction has been conferred over a matter, it generally cannot abstain from exercising that jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989). "However, in exceptional and narrow circumstances, a district court may decline to exercise or postpone the exercise of its jurisdiction." *Smith*, 2011 WL 2610527, at *3 (citing *Allegheny Cty. v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)). Such circumstances include when a federal court finds abstention necessary (1) to avoid decision of a federal constitutional question where the case may be disposed of on unsettled

---

[72] R. Doc. 67-2 at 22.
[73] *See* R. Doc. 68-1 at 19.
[74] *See* R. Doc. 48 at 14-15.
[75] Jackson admits that the CSC has exclusive jurisdiction over disputes relating to back pay asserted by classified civil servants. *See* R. Doc. 68-1 at 2.
[76] R. Doc. 67-2 at 22-23 (quoting *Smith*, 2011 WL 2610527, at *4).
[77] R. Doc. 68-1 at 19-20.

questions of state law (*Pullman* abstention);[78] (2) to avoid needless conflict with the administration

by a state of its own law and affairs (*Burford* abstention);[79] (3) to leave to the states the resolution

of unsettled questions of state law;[80] (4) to avoid duplicative litigation (*Colorado River*

abstention);[81] and (5) to refrain from hearing constitutional challenges to state action when federal

action is regarded as an improper intrusion on the right of a state to enforce its laws in its own

courts (*Younger* abstention).[82] 17A-B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H.

COOPER & VIKRAM DAVID AMAR, FEDERAL PRACTICE & PROCEDURE §§ 4241, 4251 (3d ed. 2007).

Defendants point to *Smith v. Jefferson Parish*, in which the court stayed a similar case

under the *Pullman* abstention doctrine. *See* 2011 WL 2610527, at *3-4. Defendants fail to

mention, however, that the *Smith* court was avoiding "potential confusion of conflicting outcomes"

on a final determination of the plaintiff's status as a classified civil service employee, *i.e.*, an

"unclear issue of state law that has not been previously addressed." *Id.* (citing, *inter alia*,

*Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm'n.*, 283 F.3d 650, 653 (5th Cir.

2002), and staying federal case to avoid potential confusion of conflicting outcomes with CSC's

determination of civil service status and to possibly avoid adjudication of constitutional issue).

Defendants do not question that Jackson was a classified civil service employee, nor do they

otherwise identify any unclear issue of state law that would obviate this Court's having to address

the surviving federal constitutional claim. The grounds for abstention invoked by Defendants do

not warrant that this Court exercise its narrow discretion to stay a case over which it has

jurisdiction.

---

[78] *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).
[79] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).
[80] *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959).
[81] *Colorado R. Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).
[82] *Younger v. Harris*, 401 U.S. 37 (1971).

**IV.    CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to dismiss third amended petition and alternatively, motion to stay (R. Doc. 67) is GRANTED IN PART and DENIED IN PART.

Jackson's federal and state procedural due-process claims are DISMISSED insofar as they challenge the adequacy of the post-deprivation process afforded to her, but are NOT DISMISSED insofar as they challenge the adequacy of the pre-deprivation process afforded to her. Also, Jackson's intentional-infliction-of-emotional-distress claim is NOT DISMISSED. All of Jackson's other claims (for retaliatory discharge under § 1983, the FMLA, and the ADEA/Title VII; age discrimination under the ADEA/Title VII; and breach of contract) are DISMISSED with prejudice.


New Orleans, Louisiana, this 21st day of February, 2020.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE